*183 Statement of the Case.
NICHOLLS, J.
On July 6, 1907, the district attorney of the Twenty-Second judicial district court for the parish of East Baton Rouge, filed an information charging that A. E-. Josephson and Herman Castens did on the 4th of July, 1907, in the parish of East Baton Rouge, and within the jurisdiction of the.said Twenty-Second judicial district court of the state of Louisiana, with force and arms, fe-loniously assault and beat, without wounding, one Richard Day, contrary to the form of the statutes of Louisiana in such case made and provided, and against the peace and dignity of said state.
On the 16th of July, 1907, the two accused before pleading to the information excepted to the further prosecution of the cause for the reason that the court had no jurisdiction to try and determine the cause. The case was taken up and evidence adduced, but the evidence was not taken down in writing. After hearing' the evidence, the court overruled the exception, and ordered the trial of the case to be proceeded with, whereupon counsel for the accused asked that trial on the merits be suspended pending a decision of the Supreme Court on the plea to the jurisdiction, and that time be granted to them to apply to that court for writs of certiorari and prohibition.
This application was granted, whereupon the two accused made the present application to the Supreme Court for these writs. Upon reading the application so made, the district judge was ordered to send up the record to the end that the validity of the proceedings might be ascertained, and the' proceedings in the district court were stayed until further orders.
The district judge has caused the record to be sent up accompanying his answer to the rule to show cause. In this case he makes a written statement as to the proceedings in the cause in his court, and to the view and application of the facts of the ease which, in his judgment, clothed the district court with jurisdiction. The statement of facts so sent up corresponds with a statement of facts which the district attorney and counsel of the accused have agreed upon as correct and signed. -That statement of facts was as follows:
“On July 4, 1907, Capt. A. E. Josephson of Company M, Louisiana National Guard, attempted to have a dress parade of said company in the city of Baton Rouge, pursuant to notice sent out by him on July 2d. The time to assemble at the armory in the city of Baton Rouge was fixed at 1 o’clock p. m. July 4, 1907. At 2 o’clock, the hour fixed for the parade, there being an insufficient number of men present to make a respectable showing in the parade, it was then and there decided by both the captain and the company, in accordance with the rules and by-laws adopted by the company, not to-participate in the parade, and the men present were then disbanded. Whereupon Josephson decided to send out squads of men to arrest the members who did not report for parade. At 5 o’clock, or a little thereafter, the same afternoon, on Somerules street, some three blocks from the armory, Capt. Josephson himself personally met Private Dick Day, who was in citizen’s clothes, and who had been at work that day, and asked him why he had not presented himself for parade. Private Day, who testified he had not received notice, attempted to offer his reasons for his absence, when the captain refused to listen to them on the street, but ordered Day to go with him to the armory, where he could make his excuses. Together they both went, and there Day again offered to state his excuses. The captain again declined to consider them, but ordered Day put under arrest by the enlisted men in the armory. However, Capt. Josephson proposed to'reprimand the men who had not reported at the proper hour, and for that reason he said he had ordered them to report to the armory, although he admitted that it was too late to parade, and also that he knew the men had agreed not to parade. Private Day, shortly after arriving at the armory, stated to the captain that he did not propose to remain there; that he had been induced to go there by misrepresentations of the commanding officer. The captain, however, detained him and placed him under arrest. The captain stated that this was done in order that the men arrested could one by one report to him and give their excuses, and, after hearing same, be dismissed in order. Day did not propose to await the reprimand of the captain, and said that he ‘was leaving.’ The captain ordered him to remain. Day said he would not. The captain threatened to shoot any man who attempted to escape, and so ordered the guards if any man tried to disobey orders. Day told them ‘they would have to shoot; that he was leaving.’ All of this happened about 5 o’clock p. m. Finding that he could not detain *185 Day any other way, Oapt. Josephson ordered him tied. Lieut. Castens, assisted by one or two of the privates, was ordered to do this, but they were actively assisted by Josephson himself. Day, at one time, loosened the shackles which hound him, and was thereupon retied, after some scuffling with the officers. About this time, Mr. J. S. Kean, a relative of Day, hearing of Day’s predicament, came to the armory, passed the guards, and thereupon ordered his nephew’s release. Josephson thereupon, upon solicitation of Kean and Day’s mother, ordered him untied. They then went out of the armory together, though not with Josephson’s permission. The following day Mr. Kean swore out an affidavit against Oapt. Josephson and Lieut. Oastens for assault and battery.”
In the brief filed on behalf of relators it is urged: That section 21, Act No. 181, p. 877, of 1904, provides that:
“Members of the militia ordered into active service by the state, by any proper authority shall not be liable civilly or criminally for any act or acts done by them while on duty, but shall be liable only to such court martial or en-quiry prescribed by law.”
That the act of 1904 having provided that the articles of war of the United States shall govern the state militia, and as in times of peace the United States courts-martial have no jurisdiction in capital offenses under said articles of war, so the state military courts have no jurisdiction in times of peace in capital cases, hut for minor offenses, such as the one before the court, they have, under section 21, exclusive jurisdiction. That, if the Legislature had intended that the state courts should have jurisdiction to try and determine such cases as the one before the court, it would have said so.
They submit to this court that it determine whether the act in question is constitutional, and, if so, that it interpret the meaning of Act No. 181 of 1904. Counsel call the attention of the court specially to sections 20, 21, 22, 48, 65, 66, 71, 73, 96, 99, and 110 of Act No. 181, and to Belding v. State, 25 Ark. 315, 99 Am. Dec. 214, 4 Am. Kep. 26.
Opinion.
No brief has been filed on behalf of the state, but counsel for the defendants say that the state relied upon the provision of the state Constitution that in times of peace the military is subordinate to the civil power. Counsel say: They admit the law to be that the military are in subordination to the civil authorities when they are called to assist those authorities, but they do not refer to officers acting over matters affecting their own authority over their own men at the armory. That, under the law of 1904, the officers .were given the right to order out the men for parade “at such times and places as the commanding officer may designate.” That, having the power to order the men out, he had power to enforce that order. That in attempting to enforce such an order he was not amenable to the civil district court for detaining a soldier.
Counsel say this court must be guided by the act of 1904, and notwithstanding contrary views expressed by other courts where there is no express statute governing state military forces.
The charge made against the defendants was for assault and battery without specification of the facts upon which it was predicated. No demand was made for a bill of particulars. The defendants pleaded to the jurisdiction, without setting out in their exceptions the grounds upon which this exception was based. Upon the face of the papers the district court had jurisdiction. If for any cause it did not have it, that cause was left to be drawn out and explained under the evidence. After the evidence was in, and before judgment could be rendered, the present application was made to us. Judgment has not as yet been rendered against the relators, and perhaps none may ever be rendered against them. If judgment be rendered against them, the judgment will not be ap-pealable to this court, but defendants will have full and adequate remedy by having recourse at the proper time to our supervisory jurisdiction.
We have very recently, in the matter of *187 State v. Abrams, 119 La. 981, 44 South. 807, affirmed the judgment of this court in State ex rel. Crozier v. Judge, 49 La. Ann. 1451, 22 South. 421, to the effect that application for relief under conditions such as are found in this ease should be postponed until after judgment had been rendered against the parties complaining.
For reasons assigned in those cases, the application herein made for certiorari and prohibition is hereby refused, without prejudice to relators’ right to apply if necessary for such writs hereafter.